UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF NEW YORK

_____

MISAEL HERNANDEZ,

                       Plaintiff,

                                                                 DECISION AND ORDER
     v.                                                       08-CV-0080-A

MICHAEL J. ASTRUE,
Commissioner of Social Security,

                       Defendant.
_____

## **INTRODUCTION**

        Plaintiff Misael Hernandez commenced this action pursuant to 42 U.S.C. § 405(g), on January 29, 2008, seeking review of a final determination of the defendant, Michael J. Astrue, the Commissioner of Social Security (the "Commissioner"), denying his claim for disability insurance benefits ("DIB") and Supplemental Security Income ("SSI") under the Social Security Act. The plaintiff claims to be disabled as a result of back problems, a right elbow condition, asthma, and arthritis. (Tr. 71). The Commissioner moved for judgement on the pleadings on grounds that the decision of the administrative law judge ("ALJ") was supported by substantial evidence and the plaintiff opposed that motion.

        For the reasons stated herein, the Court finds that substantial evidence in the record supports the ALJ's determination that the plaintiff is not disabled within the meaning of the Social Security Act. Therefore, the Commissioner's motion for judgment

1

on the pleadings is granted and the ALJ's determination is affirmed.

## PROCEDURAL HISTORY

The plaintiff filed an application for Social Security DIB and SSI on November 10, 2003, alleging disability since November 7, 2003. (Tr.13). A hearing was held before Administrative Law Judge ("ALJ") James J. Pileggi on August 8, 2007, in which the plaintiff's attorney represented him via telephone from Buffalo, New York and a vocational expert appeared. (Tr. 303-318). The plaintiff waived his right to appear at the hearing because he was incarcerated at the Federal Correctional Institution at Elkton, Ohio. (Tr. 305). ALJ Pileggi evaluated the plaintiff's claim *de novo*, and on September 6, 2007 found that he was not disabled. (Tr. 13-21). On December 14, 2007, the Appeals Council denied the plaintiff's request for review and, thus, the ALJ's decision became the final decision of the Commissioner. (Tr. 4-7). The plaintiff then commenced this action.

## BACKGROUND

The plaintiff was 44 years old at the time of his alleged onset of disability date and 48 at the time of the ALJ's decision. He has a 7th grade education. He can communicate effectively in English and has a previous work history as a construction worker, truck driver, and landscape laborer. He alleges that his disability began on November 7, 2003, as a result of back problems, a right elbow condition, asthma, and arthritis. (Tr. 71).

The plaintiff applied for benefits after undergoing two surgeries in 2003. Prior to surgery, the plaintiff was diagnosed with disc herniations, lumbar degenerative

changes, a locked right elbow, and a joint mouse in his right elbow.

In June 2003, Dr. Kevin Lanighan, an orthopedic surgeon, examined the plaintiff. Dr. Lanighan referred the plaintiff for a CT scan of his right elbow, which revealed degenerative changes and osteophytes. (Tr. 163).

On August 23, 2003 Dr. Raul Vazquez, a physician at Millard Fillmore Hospital, examined the plaintiff for complaints of right elbow pain. (Tr. 135-136). The plaintiff reported a medical history which included herniated lumbar discs, migraine headaches, asthma, and early ischemia with no mitral insufficiency. (Tr. 135). Upon examination, Dr. Vazquez observed that the plaintiff's right elbow exhibited a limited range of motion and tenderness. (Tr. 136). The plaintiff's lungs were clear to auscultation except for a slight wheeze. His heart demonstrated a regular rhythm and rate. Id. An x-ray of the plaintiff's chest revealed no acute cardiopulmonary disease. (Tr. 140). Dr. Vazquez assessed right elbow osteoarthritis; early ischemia; migraine headaches; mild-to-moderate asthma; and herniated lumbar discs. (Tr. 136).

Dr. Lanighan diagnosed degenerative arthritis of the right elbow and performed right elbow surgery on September 12, 2003. (Tr. 133). Post-operatively, Dr. Lanighan prescribed Lortab and advised the plaintiff to avoid strenuous activities. (Tr. 132).

Dr. Lanighan performed follow-up examinations from September through October 2003. (Tr. 161-62). He observed that the plaintiff's right elbow was benign and neurovascularly intact in September 2003. (Tr. 162). Right elbow x-rays revealed no osteophytes. Id. The plaintiff told Dr. Lanighan that he was "doing well and [not] having any difficulties" in October 2003. (Tr. 161). Dr. Lanighan observed that the plaintiff was

3

able to move his elbow fairly well but could not bring it to full extension. The doctor recommended physical therapy. Id.

Dr. Castiglia, a surgeon at Sisters of Charity Hospital, assessed lumbar radiculopathy for which he performed a lumbar decompression and diskectomy on November 7, 2003. (Tr. 170-171).

On January 28. 2004, Dr. Christine Holland, a consultative physician with Industrial Medicine Associates, P.C., performed a disability examination on the plaintiff. (Tr. 179-183). She noted that he appeared to be in pain, did not need assistance during the examination, and although he used a cane to ambulate, there was no change without it. (Tr. 181). He was also on many prescription medications such as Codeine for pain, Hydrocodone for pain, Singulair for asthma, and Methylprednisolone for arthritis. (Tr. 180). Dr. Holland found the plaintiff's lungs and chest to be clear, full flexion in his cervical spine, and tenderness without spasm near the recently healed incision over his spine. Id. He had difficulty with straight leg raises, but Dr. Holland also opined that he made a poor effort. (Tr. 182). The doctor diagnosed the plaintiff with a stable asthma condition, mild extension problems in the right elbow, and low back pain post-operation. Id. She opined that the plaintiff has "marked limitations to heavy lifting, moderate lifting at this point, twisting, and difficulty climbing." Id.

An MRI of the plaintiff's lumbar spine, taken on February 11, 2004, revealed a small disc herniation at the L2-L3 level and post-operative changes with no residual disc herniation at the L4-L5 level. (Tr. 152).

4

On February 12, 2004, a state agency medical consultant[1] reviewed the record and completed a physical residual functional capacity ("RFC") assessment. (Tr. 184-188). The state agency medical consultant determined that as of November 7, 2004, one year after the date of lumbar surgery, the plaintiff would be able to perform work at a light level of exertion. (Tr. 185). The plaintiff would be able to occasionally lift 20 pounds, frequently lift 10 pounds, stand and sit about six hours in an eight hour workday, and would have unlimited abilities in pushing and pulling. Id.

The record contains treatment records from November 17, 2005 through July 31, 2007, while the plaintiff was incarcerated at the Federal Correctional Institution at Elkton, Ohio. (Tr. 192-256). Because the plaintiff was not permitted prescription medication while incarcerated, he was given Naproxen, Advil, and other over-the-counter medications instead. (Tr. 253). Medical personnel at the prison found that his thoratic spine was normal, although he continued to complain about back pain. (Tr. 256, 223). The plaintiff's mental health was given a global assessment of functioning score of 70, indicating mild symptoms of depression. (Tr. 197).

The Commissioner argues that since the ALJ applied the correct legal standards and his decision is supported by substantial evidence, his decision should be affirmed. The plaintiff disagrees and argues that the ALJ erred by (1) not ordering pulmonary function testing to properly assess the plaintiff's asthma condition; (2) not properly evaluating the side effects of the plaintiff's prescription medication; and (3) not considering the plaintiff's advancing age or probation status while making an RFC

---

[1] A state agency medical consultant considers the evidence in a claimant's case record and makes findings of fact about medical issues such as the claimant's residual functional capacity. See 20 C.F.R. § 404.1527.

determination.

## DISCUSSION

The Court must uphold the Commissioner's decision if it is free of legal error and based on substantial evidence. 42 U.S.C. § 405(g). The Supreme Court has defined the term "substantial evidence," in the context of a Social Security case, as "more than a mere scintilla" and as that evidence which "a reasonable mind might accept as adequate to support a conclusion." Richardson v. Perales, 402 U.S. 389, 401 (1971) (quoting Consolidated Edison Co. V. NLRB, 305 U.S. 197, 229 (1938)).

In order to establish a disability under the Act, the plaintiff has the burden of demonstrating (1) that he was unable to engage in substantial gainful activity by reason of a physical or mental impairment that could have been expected to last for a continuous period of at least twelve months, and (2) that the existence of such impairment was demonstrated by evidence supported by medically acceptable clinical and laboratory techniques. See 42 U.S.C. § 423(d); 42 U.S.C. § 1382c(a)(3). An individual can be found disabled under the Act "only if his physical or mental impairment or impairments are of such severity that he is not only unable to do his previous work but cannot, considering his age, education, and work experience, engage in any other kind of substantial gainful work which exists in the national economy." 42 U.S.C. § 423(d)(2)(A). Moreover, eligibility for SSI based upon disability is conditioned upon compliance with the income and resource requirements of 42 U.S.C. § 1382a and 1382b.

**I. The ALJ properly applied the Five-Step Analysis.**

The Commissioner has established a five-step sequential evaluation for the adjudication of disability claims:

> The first step of this process requires the Secretary to determine whether the claimant is presently employed. If the claimant is not employed, the Secretary then determines whether the claimant has a "severe impairment" that limits her capacity to work. If the claimant has such an impairment, the Secretary next considers whether the claimant has an impairment that is listed in Appendix 1 of the regulations. When the claimant has such an impairment, the Secretary will find the claimant disabled. However, if the claimant does not have a listed impairment, the Secretary must determine, under the fourth step, whether the claimant possesses the residual functional capacity to perform her past relevant work. Finally, if the claimant is unable to perform her past relevant work, the Secretary determines whether the claimant is capable of performing any other work.

See Perez v. Chater, 77 F.3d 41, 46 (2d Cir. 1996); 20 C.F.R. § 404.1520; 20 C.F.R § 416.920. The burden is on the claimant at the first four steps of the evaluation. If the claimant establishes that she is not capable of performing her past relevant work, then the burden shifts to the Commissioner who must then determine whether the claimant is capable of performing other work which exists in significant numbers in the national economy. See Bapp v. Bowen, 802 F.2d 601, 604 (2d Cir. 1986).

Here, the Court finds that the ALJ properly applied the five-step analysis in his disability determination.

At the first step, the ALJ found that the plaintiff had not engaged in substantial gainful activity since November 7, 2003, the alleged onset of disability date.[2]

---

[2] The Court also notes that since the plaintiff's last date insured was December 31, 2006, he must establish an onset of disability as of that date to qualify for DIB.

7

(Tr. 15).

At the second step, the ALJ found that the plaintiff's degenerative disc disease and arthritis of his right elbow were severe impairments, while his asthma and depression were non-severe impairments. (Tr. 15). There is substantial evidence to support the ALJ's finding that the plaintiff's asthma and depression were non-severe impairments. As to the plaintiff's asthma, on August 15, 2003, an x-ray of the plaintiff's chest found nothing remarkable about his pulmonary vascularity. (Tr. 140). An exam following the plaintiff's elbow surgery diagnosed the plaintiff with only "mild to moderate" asthma. (Tr. 136). Furthermore, the consultative examination by Dr. Holland found that the plaintiff's chest and lungs were clear and his asthmatic condition was stable. (Tr. 181-182). As to the plaintiff's depression, treatment records at FCI Elkton on April 10, 2007 and July 13, 2007 indicate only mild symptoms and there was no other evidence that he received any mental treatment. (Tr. 16, 197, 231).

At step three, the ALJ considered the combination of the plaintiff's severe and nonsevere impairments and determined that they did not meet or medically equal any listed impairment in Appendix 1 of 20 C.F.R. Part 404, Subpart P. (Tr. 17). A severe impairment will not qualify if it meets only some, but not all, of the required medical criteria. See Sullivan v. Zebley, 493 U.S. 521, 320 (1990). Regarding the plaintiff's right elbow condition, Listing Section 1.02, "Major dysfunction of a joint," requires an "inability to perform fine and gross movements effectively." 20 C.F.R. Part 404, Subpart P, Appendix 1, Section 1.02. Here, the Court finds that substantial evidence supports the ALJ's determination that the plaintiff's right elbow does not meet this impairment. Dr. Holland determined that the plaintiff's elbows can flex normally, his

8

hand and finger dexterity are intact, and he has full grip strength bilaterally. (Tr. 182). Dr. Lanighan, the plaintiff's elbow surgeon, reported that the plaintiff could move his elbow fairly well one month after elbow surgery. (Tr. 161). Additionally, the ALJ found that the plaintiff's back condition failed to meet Listing Section 1.04, "Disorders of the spine," which requires motor loss, sensory loss, and reflex loss. See 20 C.F.R. Part 404, Subpart P, Appendix 1, Section 1.04. Here, the Court finds that there was substantial evidence to support the ALJ's finding that the plaintiff's back problems do not meet this impairment. Dr. Holland observed that the plaintiff could ambulate normally without the use of a cane, he had no trouble undressing, he had normal reflexes, and he had full muscle strength in his upper and lower extremities. (Tr. 181, 182).

      Before reaching the fourth step, the ALJ determined that the plaintiff retained the RFC to perform light work[3] with a limited ability to lift, grasp, push, or pull with the right arm. (Tr. 17). The Court finds that this determination is supported by substantial evidence. The plaintiff's physical RFC assessment determined that after 12 months of post-surgery recovery, the plaintiff could occasionally lift 20 pounds, frequently lift 10 pounds, stand and sit about six hours in an eight hour workday, and has unlimited abilities in pushing and pulling. (Tr. 185). An MRI of the plaintiff's spine taken February 11, 2004 revealed post-operative changes with no serious disc herniation or neural foraminal narrowing. (Tr. 152). Dr. Holland's examination noted that

---

[3] According to 20 C.F.R. § 416.967(b), "light work involves lifting no more than 20 pounds at a time with frequent lifting or carrying of objects weight up to 10 pounds...[A] job is in this category when it requires a good deal of walking or standing, or when it involves sitting most of the time with some pushing and pulling of arm and or leg controls."

the plaintiff ambulated without a cane, exhibited no difficulty getting on and off the examination table, and rose from a seated position with no difficulty. (Tr. 181). The plaintiff also demonstrated full muscle strength in his upper and lower extremities, as well as intact finger dexterity and full grip strength. (Tr. 182). Finally, it is noted that none of the plaintiff's medical sources assessed any functional limitations that would preclude performance of light work.

At the fourth step, the ALJ determined that the plaintiff is unable to perform any of his past work because jobs as a construction worker, truck driver, and landscape laborer all exceed the RFC for light work. (Tr. 19).

At step five, the ALJ determined that there are jobs that exist in significant numbers in the national economy that the plaintiff can perform. (Tr. 20). To make this determination, the ALJ considered the plaintiff's age, education, work experience, RFC, and the testimony of a vocational expert ("VE"). VE testimony was necessary because the ALJ found that the plaintiff's ability to perform all of the requirements of light work was impeded by his right arm limitations.[4] Id. The VE testified that a hypothetical person with the same vocational factors and RFC as the plaintiff could perform jobs such as a ticket taker, flagger, and sorter. (Tr. 312). The hypothetical person could also perform sedentary jobs such as a surveillance system monitor, order clerk for food and beverages, and telephone quotation clerk. (Tr. 313).

Because the ALJ properly applied the five-step analysis, the Court finds that the ALJ properly concluded that the plaintiff is not disabled, as defined in the Social

---

[4] If there had been no right arm limitations, Rule 202.18 of the Medical-Vocational Guidelines would properly direct a finding that the plaintiff is not disabled. See 20 C.F.R. Part 404, Subpart P, Appendix 2, Rule 202.18.

Security Act.

## II. The Plaintiff's Claims are without Merit.

### a. *Pulmonary function testing*

The plaintiff argues that the ALJ should have ordered an impartial medical examination that included pulmonary function testing when faced with substantial evidence of the plaintiff's severe respiratory problems. The plaintiff points to a peak flow measurement of 300 liters per minute, taken March 2006 at the Elkton Correctional Facility (Elkton), as evidence that his expiratory flow is significantly impaired.

The Court finds that it was not necessary for the ALJ to order pulmonary function testing because he properly determined that the plaintiff's asthma was a nonsevere impairment. Notably, physicians at Elkton observed in February and March 2006 that the plaintiff's lungs were clear to auscultation and exhibited no more than a slight wheeze. (Tr. 234, 237). In 2004, Dr. Holland assessed the plaintiff's asthma as stable with no functional limitations, and in August 2003, Dr. Vazquez found that the plaintiff's lungs were clear to auscultation except for a slight wheeze. (Tr. 182, 136).

### b. *Side effects of pain medication*

The plaintiff also claims that the ALJ erred by not considering the side effects of the plaintiff's prescribed pain medication while making an RFC determination, despite the ALJ's representation at the hearing that he would do so.

Contrary to the plaintiff's contention, the ALJ stated that in determining the plaintiff's RFC, he "[gave] consideration to the [plaintiff's] contentions that side effects of medication... would impact the [plaintiff's] ability to engage in work activity." (Tr. 19).

The ALJ is not required to further explain how he evaluated this evidence. See Mongeur v. Heckler, 722 F.2d 1032, 1040 (2d Cir. 1983). In addition, there is substantial evidence throughout the opinion to support the ALJ's determination of no disability, so he is not required to thoroughly explain his evaluation of how the plaintiff's pain medication affects his ability to concentrate at work. See id.

Therefore, the Court finds that the ALJ did not err in his evaluation of the side effects of the plaintiff's pain medication while making an RFC determination.

    *c.*    *Lack of employability due to advancing age and probation*

The plaintiff argues that although he was a "younger" individual throughout the relevant period, he is now 49 years old, so the ALJ should have considered him more limited in his ability to adjust to other work. The plaintiff also contends that the ALJ should consider his current probation status to be a further detriment to employment. The Court finds that the ALJ properly considered the plaintiff's age while making a determination that he is not disabled under the Social Security Act. Whether the ALJ used age 44 or age 49, the plaintiff is still considered to be a "younger individual" and "not disabled" under 20 C.F.R. Part 404, Subpart P, Appendix 2, Rule 202.18. In order to be found disabled under the Medical-Vocational Guidelines, the plaintiff would have to be limited to sedentary work and illiterate or unable to communicate in English. See 20 C.F.R. Part 404, Subpart P, Appendix 2, Rule 201.17. Furthermore, the ALJ did consider an individual older than 44 because at the hearing, the ALJ's hypothetical individual for the VE was 48 years old (Tr. 310).

As to the plaintiff's claim that the ALJ was required to take the plaintiff's probation status into consideration, the plaintiff cites no regulations or cases in support

of this argument. In the absence of any authority supporting this contention, the Court finds that the ALJ was not required to factor in the plaintiff's status as a probationer.

## CONCLUSION

For the reasons stated, the Court grants the Commissioner's motion for judgment on the pleadings. The Clerk of Court shall take all steps necessary to close the case.

SO ORDERED.

*s/ Richard J. Arcara*
HONORABLE RICHARD J. ARCARA
CHIEF JUDGE
UNITED STATES DISTRICT COURT

DATED: November 13, 2009